UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STEWART BROWN,

            Plaintiff,

      v.                                            Case No. 21-cv-0015-bhl

JENNIFER MCDERMOTT,
CAPTAIN HOFFMAN,
HSU MANAGER,
JOHN DOES, and
WISCONSIN DEPARTMENT OF CORRECTIONS,

            Defendants.

---

## SCREENING ORDER

---

Plaintiff Stewart Brown, who is currently serving a state prison sentence at the John C. Burke Correctional Center and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Kettle Moraine Correctional Institution. This matter comes before the Court on Brown's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Brown has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Brown has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial

partial filing fee of $38.43.  Brown's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. §1915A(b).  In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted.  To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Brown alleges that, on October 21, 2019, he was sent to an offsite urology appointment with Dr. James Crauley (not a defendant) for a check-up related to his prostate cancer. Dkt. No. 1. Brown was accompanied by two transport officers, whose names Brown does not know. Brown explains that he was shackled with his pants down when Dr. Crauley said, "Mr. Brown this camera is going to hurt going in, but once in it'll be ok." *Id.* at 2-3. Brown says he told Dr. Crauley to just get it over with, at which point, Dr. Crauley said, "At least it's not a penis!" *Id.* at 3. The officers started laughing and one said, "You should have seen his face how it turned red." *Id.* Brown says he was humiliated, but because he was concerned about his condition, he let Dr. Crauley continue the examination.

Brown asserts that, after the examination, he asked the officers to help him make an incident report, but they declined to get involved. He states that he reported the incident to health services staff both in person and via a request form.

Brown was scheduled to see Dr. Crauley six months later, but due to COVID, the appointment was postponed until July 22, 2020. The day before the appointment, Brown spoke to a nurse (not a defendant) about what had happened. She noted everything in the computer but told him that Dr. Crauley was the only urologist the institution had at that time. Brown went to the appointment but refused to let Dr. Crauley touch him.

After the visit, the warden found out what had happened and directed Brown to speak with Captain Hoffman. Brown says he has not heard back from Hoffman. Brown says he tried to call the Prison Rape Elimination Act (PREA) hotline to report what had happened, but the number was

not working. Brown reported his challenges to several officers (none are defendants). Brown was finally able to access the PREA hotline about a week later, on August 19, 2020. Brown says that he has not heard back from anyone even though "[i]t is clear that [his] constitutional rights were violated." Dkt. No. 1 at 5. Brown asserts that he has been depressed and stressed and has had trouble sleeping. He says he is scared because his cancer is serious and he continues to be referred to Dr. Crauley for care. (The Court notes that Brown has since transferred to a different institution, so it is not clear whether he is still in Dr. Crauley's care.)

### THE COURT'S ANALYSIS

This is the second time Brown has presented these allegations to the Court. On October 1, 2020, Brown sued Dr. Crauley and his employer Agnesian Healthcare, Inc. based on the comment Dr. Crauley allegedly made during his examination of Brown. *See Brown v. Crauley*, No. 20-cv-1521-bhl (E.D. Wis. Oct. 1, 2020). The Court dismissed the complaint for failure to state a claim upon which relief could be granted. *Brown*, No. 20-cv-1521-bhl at Dkt. No. 11. The Court explained that:

> … it is well settled that verbal abuse or harassment does not violat[e] the Constitution. "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of derogatory language, while unprofessional and deplorable, does not violate the Constitution.") …. If made, Dr. Crauley's comment was inappropriate and unprofessional. But it does not rise to the level of an "extreme deprivation" sufficient to constitute a violation of Brown's Eighth Amendment rights.

*Id.*

Brown now asserts that the unidentified officers violated his rights when they laughed at Dr. Crauley's comment and refused to help him file an incident report; that the warden, the health services manager, and Hoffman violated his rights when they failed to investigate his complaints

4

and/or refer him to a different urologist; and that the Wisconsin Department of Corrections violated his rights when it failed to investigate his PREA complaint. None of the complained about actions state a claim upon which relief can be granted.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.1996). The Court has already explained that, although Dr. Crauley's comment was unprofessional, it was not sufficiently extreme to run afoul of the Constitution's prohibition against cruel and unusual punishment. If Dr. Crauley did not violate Brown's rights when he made the comment, the officers did not violate his rights when they laughed at the comment. Again, the alleged conduct was unprofessional and rude, but it did not violate the Constitution.

Similarly, because "[o]nly persons who cause or participate in the violation are responsible," Defendants are not liable under the Constitution simply for failing to adequately investigate or respond to Brown's complaints, particularly here, where the underlying misconduct does not itself violate the Constitution. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2004); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

Failure to refer Brown to a different urologist also did not violates Brown's rights. Brown's allegations do not suggest that there is any reason to question the quality of Dr. Crauley's care. Brown merely objects to Dr. Crauley's manner. And, as the Court has explained, while his manner may be unpleasant, it does not violate the Constitution. *See Arnett v. Webster*, 658 F3d 742, 754

5

(7th Cir. 2011) (explaining that inmates are not entitled to demand specific care nor are they entitled to the best care possible).

Finally, Brown cannot sue the Wisconsin Department of Corrections. The State and its agencies cannot be sued for constitutional violations because they are not "persons" within the meaning of §1983. *Will v. Michigan Dep't of State Police*, 493 U.S. 58, 65-66 (1989).

Brown has provided no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) (quoting *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988), *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319 (1989)). Accordingly, the Court will dismiss this case.

**IT IS THEREFORE ORDERED** that Brown's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of Brown shall collect from his institution trust account the $311.57 balance of the filing fee by collecting monthly payments from Brown's prison trust account in an amount equal to 20% of the preceding month's income credited to Brown's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Brown is transferred to another institution, the transferring institution shall forward a copy of this Order along with Brown's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of February, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.